

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>JOSHUA ABELL,<br><br>    Defendant. | CRIM. NO. SA-04-CR-681 (OG) |

## PLEA AGREEMENT

The United States of America, by and through the United States Attorney for the Western District of Texas (hereinafter referred to as "the Government"), and Defendant Joshua Abell (hereinafter referred to as "Defendant"), individually and by and through Robert Barrera, Attorney at Law, Attorney for the Defendant, hereby enter into the following plea agreement in the above-referenced cause pursuant to Rule 11(c)(1), Fed.R.Crim.P.:

**1. Defendant's Agreement to Plead Guilty:**

Defendant Joshua Abell agrees to plead guilty to Counts One and Two of the Information in this cause, which respectively charge the Defendant with the crime of conspiracy to commit criminal infringement of copyright in violation of Title 18, United States Code, Section 371 and criminal infringement of copyright in violation of Title 17, United States Code, Section 506(a)(1) and Title 18, United States Code, Sections 2319(b)(1). Defendant also agrees to waive his right to have the charges presented to a Grand Jury.

**2. Punishment to be Imposed:**

The Defendant understands that the sentence imposed in his case will be determined by the Court in accordance with Title 18 U.S.C. § 3553(a) as construed by the United States Supreme Court in its January 12, 2005 decisions in United States v. Booker and United States v. Fanfan. The Sentencing Guidelines are now considered advisory. The Defendant stipulates that no person has specifically promised what sentence he will receive. The Defendant therefore fully understands that the punishment that could be imposed for the crime to which he is pleading guilty is: [handwritten: as to each count]

(a) a maximum term of imprisonment of ~~10~~ 5 years; [handwritten: for a total of 10 years]

(b) a maximum fine of $250,000; [handwritten: for a total of $500,000]

(c) a maximum term of supervised release of three years; and [handwritten: for a total of 6 years]

(d) a mandatory $100.00 special assessment pursuant to the Victims of Crimes Act. [handwritten: for a total 200]

Defendant understands and acknowledges that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for his offense. The Defendant acknowledges that he has discussed this range of punishment and penalties with his attorney, and still wants to plead guilty in this case.

**3. Factual Basis for Plea:**

The Defendant agrees and stipulates as part of this plea agreement to the Statement of Facts presented in Attachment "A" of this document.

**4. Defendant's Waiver of Right to Appeal or Challenge Sentence:**

The Defendant is aware that his sentence may be up to the maximum allowed by statute for his offense. He is also aware that the sentence to be imposed does not provide for parole. By entering into this agreement, and as a term of this agreement, the Defendant voluntarily and

2

knowingly waives the right to appeal his sentence on any ground, including any appeal right conferred by 18 U.S.C. § 3742. The Defendant also voluntarily and knowingly waives his right to contest his sentence or the manner in which it was determined in any post-conviction proceeding, including, but not limited to, a proceeding pursuant to 28 U.S.C. § 2255; provided, however, that consistent with principles of professional responsibility imposed on the Defendant's counsel and counsel for the Government, the Defendant does not waive his right to challenge his sentence to the extent that it is the result of a violation of his constitutional rights based on claims of ineffective assistance of counsel or prosecutorial misconduct of constitutional dimension.

The Defendant waives his rights to challenge the sentence imposed, knowing that his sentence has not yet been determined by the Court. The Defendant is aware that any estimate of the sentencing range that he may receive from his counsel, the Government or the Probation Office, is not a promise, did not induce his guilty plea or this waiver, and does not bind the Government, the Probation Office, or the Court. In other words, the Defendant understands that he cannot challenge the sentence imposed by the District Court, even if it differs substantially from any sentencing range estimated by his attorney, the attorney for the Government or the Probation Officer. Realizing the uncertainty in estimating what sentence he will ultimately receive, the Defendant knowingly and voluntarily waives his right to appeal the sentence or to contest it in any post-conviction proceeding in exchange for the concessions made by the Government in this Agreement, except as otherwise provided herein.

## 5. Defendant's Acknowledgment of Effective Assistance of Counsel:

The Defendant acknowledges that he has reviewed the merits of the charges and all possible defenses that he may have with his attorney, including, but not limited to, his right to file motions

with the Court. The Defendant acknowledges that he has had sufficient time to consult with his attorney on such matters and all possible defenses he may have. The Defendant further acknowledges by signing this Agreement that he believes he has received effective assistance of counsel, and that he has had sufficient time to consult with his counsel regarding this plea agreement and the punishment that could be imposed.

The Defendant voluntarily and knowingly waives his right to file pretrial motions, to have a hearing on any such pretrial motion, previously filed or otherwise, and to have a trial on the charges brought against his in this case.

**6. Government's Agreement and Advisory Sentencing Guideline Calculations:**

The Defendant agrees to plead guilty to Counts One and Two of the Information. The Defendant and the Government further agree and stipulate to the following sentencing factors with respect to the advisory Sentencing Guidelines:

(a) Section 2B5.3 of the advisory Sentencing Guidelines applies to this case.

(b) The Base Offense Level is Level Eight pursuant to the provisions of Section 2B5.3 of the advisory Sentencing Guidelines.

(c) Pursuant to Section 2B5.3(b)(1), if the infringement amount exceeds $5,000, the base offense level should be increased by number of levels indicated in the table found in Section 2B1.1 corresponding to the loss amount. Section 2B1.1 indicates that, for a loss valued between $120,000 and $200,000, the base offense level should be increased by Ten levels.

(d) The Base Offense Level should be increased by Two levels because the offense involved the "uploading of infringing items" pursuant to the provisions of Section 2B5.3(b)(2) of the advisory Sentencing Guidelines.

(e) The Government agrees not to oppose a maximum level adjustment for acceptance of responsibility pursuant to Section 3E1.1 of the advisory Sentencing Guidelines, if recommended by the Probation Office.

As set out in this section, in exchange for the Defendant's plea of guilty to Counts One and Two of the Information, the United States of America agrees to not oppose a maximum level reduction for acceptance of responsibility pursuant to Section 3E1.1 of the advisory Sentencing Guidelines if recommended by the Probation Office and will leave such a reduction, if any, to the discretion of the Court. The Defendant understands that the Court is not obligated to grant the maximum level reduction for acceptance of responsibility.

The Defendant understands that the sentencing guidelines are only advisory and it is within the complete discretion of the Court as to the sentence to be imposed on the Defendant. The only limitation on the Court is the statutory maximum. The Defendant will not be permitted to withdraw his agreement to plead guilty because of the Court's decision in imposing such sentence. Moreover, the Government reserves the right to advocate in support of the Court's judgment should this case be presented to an appellate court.

Except as expressly stated above, the Defendant and the Government have entered into no other stipulations as to the applicability or inapplicability of any other advisory sentencing guideline provisions or sentencing factors that have been applied; provided, however, that the Government retains all rights to oppose any request for any downward adjustment in the offense level, except as expressly set forth in the immediately preceding sub-paragraph (e) above.

The Defendant understands and agrees that nothing in this Plea Agreement shall prohibit the Government from presenting all relevant facts, information and evidence to the United States

5

Probation Office and to the Court.

The Defendant understands and agrees that pursuant to U.S.S.G. § 6B1.4(d), the District Court may reject any of these sentencing stipulations in whole or in part. In the event that the District Court rejects any sentencing stipulation, the Defendant and the United States Attorney shall remain bound by all other terms of this plea agreement, including all other stipulations.

To the extent that the parties have projected sentencing ranges in reliance on the above stipulations, such projections are estimates only and are not binding on the parties, on the United States Probation Office, or on the District Court. The Defendant will not be permitted to withdraw his guilty plea if the sentencing ranges as determined by the District Court differ from those projected by the parties or by the Probation Office and, in any event, their projections are only advisory.

**7. Restitution:**

The Government and the Defendant agree to recommend to the Court that the complication and prolongation of the sentencing process resulting from fashioning an order of restitution outweighs the need to provide restitution to any victims, pursuant to Title 18, Section 3663A(c)(3)(B). The Defendant understands that, despite this agreed upon recommendation, the Court may order the Defendant to pay restitution in the amount not to exceed $120,000 to a victim or victims of the offense pursuant to Title 18, Section 3663A.

**8. Forfeiture:**

Under 17 U.S.C. § 506(b), the Court must order forfeiture of all infringing copies of copyrighted works and all implements, devices, and equipment (including computers and computer equipment) used in the manufacture, reproduction, or distribution of such infringing copies. The

Defendant agrees that all such items, which were seized from his custody or control on April 21, 2004, shall be subject to forfeiture and destruction or other disposition. The Defendant represents that he is the sole owner of such items or that, to the extent he is not the sole owner, he obtained the items from third parties involved in the conspiracy whose whereabouts the Defendant does not know. The Defendant agrees to assist the government in its defense against any third-party claims that may be asserted with respect to the referenced items to be forfeited. The Defendant further agrees to waive the provisions of Federal Rules of Criminal Procedure 7(c)(2) and 32.2, and to execute any additional papers or agreements as necessary to accomplish the purposes of this paragraph.

(a) The Defendant understands and agrees that by virtue of his plea of guilty he waives any rights or cause of action to claim that he is a "substantially prevailing party" for the purpose of recovery of attorney fees and other litigation costs in any related forfeiture proceeding pursuant to 28 U.S.C. § 2465(b)(1).

(b) Defendant hereby agrees to the entry of an order of forfeiture of the property seized on April 21, 2004 from his home which was used in the commission of the instant crime. The property to be forfeited is specifically described as: (1) one home-built beige color computer; ~~(2) one home-built blue color computer;~~ (3) one box containing 231 compact disks, 3 zip disks and 4 black nylon CD cases containing 625 compact disks.

In the event that any claim is made by third parties to any of the aforementioned assets, the Defendant agrees to forfeit property as substitute assets equal in value to those assets claimed by third parties.

(c) Defendant agrees to cooperate with the United States Attorney by taking whatever steps are necessary to pass clear title to the United States of assets named or covered by the

7

aforementioned assets, including, but not limited to, completing any legal documents required for the transfer of assets to the United States, and taking whatever steps are necessary to ensure that assets subject to forfeiture are not sold, disbursed, wasted, or otherwise made unavailable for forfeiture.

(d) Defendant agrees that Defendant has identified all assets which constitute proceeds or were used in the facilitation of the instant offense to which he is pleading guilty. Defendant further agrees to truthfully and accurately complete a financial disclosure form prior to signing this agreement requiring a listing of assets and financial interests. Defendant represents that any other assets which Defendant may hold, other than those listed in sub-paragraph (b) above, have no value.

(e) Defendant agrees that, upon request by the United States Attorney, Defendant will voluntarily submit to a polygraph examiner of the United States Attorney's choice. In the event that Defendant is called upon by the United States Attorney to submit to a polygraph examination and Defendant's performance in the examination suggests a conscious intent to deceive, mislead or lie with respect to Defendant's assets, Defendant will be afforded an opportunity to review and explain the deceptive responses to the United States Attorney. If the totality of the circumstances convinces the United States Attorney that Defendant's financial statement is not complete and truthful, Defendant will be so informed. The United States Attorney is then not limited to forfeiture set forth in this plea, but may pursue any and all forfeiture remedies available.

(f) The Defendant agrees to waive any claims, defenses or challenges arising under the Excessive Fines Clause of the Eighth Amendment resulting from the forfeiture imposed as a result of this indictment and any pending or completed administrative or civil forfeiture actions based upon the course of conduct that provides the factual basis for the forfeiture.

(g) The Defendant hereby waives the requirements of Fed. R. Crim. P. 32.2 and 43(a) with respect to the imposition of any forfeiture sanction carried out in accordance with this Plea Agreement, and further agrees to not contest or challenge in any manner (including direct appeal, habeas corpus, under 28 U.S.C. § 2255, or any other means) such forfeitures on any grounds, including that the forfeiture constitutes an excessive fine or punishment.

## 9. Cooperation

The Defendant agrees to fully cooperate with the United States in its investigation of criminal matters within the Southern District of Iowa and elsewhere, and will provide complete and truthful information to the attorneys and law enforcement officers of the United States. The Defendant agrees to answer all questions concerning any criminal matters of which Defendant has knowledge, and Defendant will not withhold any information. The Defendant will neither attempt to protect any person or entity through false information or omission, nor falsely implicate any person or entity. The Defendant will not take any action which would obstruct, impede, interfere with, inhibit or disclose the pending investigation. The Defendant will provide truthful and accurate information regarding his use of computers to engage in the federal copyright violations or any other criminal activity. Specifically, the Defendant must disclose to the United States the presence of any and all evidence of criminal activity stored on computers, electronic storage devices, hard drives, CD and DVD disks and diskettes and any other electronic storage device that was seized by FBI Agents on April 21, 2004. Failure to truthfully comply with such disclosure shall be deemed a breach of this agreement and, at the government's discretion, may void this agreement.

(a) The Defendant agrees to fully and truthfully complete a financial statement, and

provide the United States Attorney's Office with any information or documentation in the Defendant's possession or control regarding the Defendant's financial affairs.

(b) The Defendant agrees to tell the truth at all times, whether it be during this investigation or as a witness at trial, and regardless of who asks the questions (the prosecutor, the law enforcement agent, the judge, or the defense attorney). In the event the Defendant should be called as a witness, the Defendant's failure to provide truthful information will render this agreement voidable at the sole discretion of the United States, and will subject the Defendant to a prosecution for perjury which is punishable by a fine of not more than $250,000.00 and a term of imprisonment of not more than five years, or both.

(c) Pursuant to Section 1B1.8 of the Sentencing Guidelines, the United States Attorney agrees not to use against Defendant any self-incriminating information provided by the Defendant under this agreement. This paragraph notwithstanding, the United States Attorney may use against the Defendant any statements made by Defendant prior to the parties entering into this agreement, or, if applicable, any prior proffer agreement. The United States may also use any evidence developed independent of the Defendant's self-incriminating statements. Further, as provided below, the United States Attorney may use against Defendant statements made by Defendant under this plea agreement:

    (1) if the Defendant admits conduct in interview or debriefing and then denies the same or presents evidence to the contrary at any hearing subsequent to the signing of this plea agreement; or,

    (2) to the extent as provided for in the following paragraph "<u>Breach–Use of Information</u>".

(d) If the Defendant breaches any terms and conditions of this agreement, the United

States Attorney is free to use against the Defendant any statement given by the Defendant in debriefings or during testimony. Such statements or testimony may be used against the Defendant in any criminal prosecution, including but not necessarily limited to prosecutions of the instant offense, perjury, obstruction of justice, or other applicable criminal prosecution.

(e) Any violation of law or any violation of pretrial release conditions committed by the Defendant will render this agreement voidable at the sole discretion of the United States.

(f) From and after the date of the parties entry into this plea agreement, Defendant and Defendant's attorney agree that the Defendant will be available to perform the cooperation provided by this plea agreement without the United States Attorney first notifying and receiving authorization from Defendant's attorney. Attorneys and investigators for the United States have standing authority to request Defendant to provide cooperation required by this agreement. If Defendant elects to speak to anyone other than attorneys and investigators for the United States about the information known to Defendant regarding criminal activity, Defendant shall, prior to discussing such information with such other person, give notice to United States Attorney a reasonable time in advance of such discussion to allow representatives of the United States Attorney to be present for such discussion. The United States Attorney requests to have a representative present for any such discussions, should they occur.

**10. Substantial Assistance**

If the Defendant fully complies with all the terms and conditions of this plea agreement, and the United States Attorney concludes that the Defendant has provided substantial assistance in the investigation or prosecution of one or more other persons who have committed a criminal offense, then the government may file a motion requesting the Court to depart from the

sentencing guidelines and/or to sentence the Defendant below a level established by statute as a minimum sentence (hereafter "substantial-assistance motion"). Such motion may be made pursuant to the advisory United States Sentencing Guideline Section 5K1.1, Title 18, United States Code, Section 3553(e), or both. The Defendant understands that a motion pursuant to U.S.S.G. § 5K1.1 advises the Court to depart from the sentencing guidelines. The government retains the discretion whether to file no motion, only a motion pursuant to U.S.S.G. § 5K1.1, or motions pursuant to both U.S.S.G. § 5K1.1 and 18 U.S.C. § 3553(e). The decision whether to file a substantial-assistance motion will be in the sole discretion of the United States Attorney. The Defendant understands that the United States Attorney will decide whether the Defendant has provided substantial assistance sufficient to warrant such a motion. A proffer interview or a debriefing statement does not necessarily constitute substantial assistance in the investigation or prosecution of another person. The Defendant further understands that if a substantial-assistance motion is filed, the Court will decide whether the Defendant has provided substantial assistance and, if so, the amount of reduction in sentence that is to be granted.

(a) If the Defendant continues to comply with all terms of this agreement after sentencing, and the United States Attorney concludes that, subsequent to sentencing, the Defendant has provided substantial assistance in the investigation or prosecution of one or more other persons who have committed a criminal offense, then the government may file a motion requesting the Court to reduce the Defendant's sentence pursuant to Federal Rule of Criminal Procedure 35(b). The decision whether to file a substantial-assistance motion pursuant to Rule 35(b) will be in the sole discretion of the United States Attorney. The Defendant understands that the United States Attorney will decide whether the Defendant has provided substantial

assistance sufficient to warrant such a motion. A proffer interview or a debriefing statement does not necessarily constitute substantial assistance in the investigation or prosecution of another person. The government's use after sentencing of information provided by the Defendant prior to sentencing typically will not warrant a substantial-assistance motion pursuant to Rule 35(b), where the Court has been informed of the Defendant's cooperation in connection with a substantial-assistance motion filed at sentencing. The Defendant further understands that if a substantial-assistance motion is filed pursuant to Rule 35(b), the Court will decide whether the Defendant has provided substantial assistance and, if so, the amount of reduction in sentence that is to be granted.

(b) If the Defendant violates the terms of this agreement at any time, then the government is free to consider the Defendant's breach of the agreement in determining whether to file any substantial-assistance motion, and the government may decline to file a substantial-assistance motion on the ground that the Defendant failed to comply with the terms of the agreement.

(c) <u>Amount of Reduction</u>. If the government files a substantial-assistance motion, then the appropriate reduction in sentence, if any, shall be determined by the Court for reasons that may include, but are not limited to, consideration of the following:

(1) the Court's evaluation of the significance and usefulness of the Defendant's assistance, taking into consideration the United States Attorney's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the Defendant;

(3) the nature and extent of the Defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the Defendant or Defendant's family resulting from Defendant's assistance;

   (5) the timeliness of the Defendant's assistance;

Where appropriate, the government may also urge the Court to consider additional factors, including but not limited to the following:

   (6) any benefit the Defendant may have received under the terms of the plea agreement;

   (7) any obstruction of justice, or attempted interference with, or disclosure of the investigation by Defendant, whether before or after entering into this plea agreement;

   (8) any violation of any criminal statute or ordinance by the Defendant after entry into this plea agreement;

   (9) any violation of the terms of this plea agreement by the Defendant.

## 11. Reservation of Rights:

The Government and Defendant each reserve the right to: (1) bring its version of the facts of this case to the attention of the probation office in connection with that Office's preparation of a presentence report; (2) dispute sentencing factors or facts material to sentencing in the presentence report; and (3) seek resolution of such factors or facts in conference with opposing counsel and the United States Probation Office. All parties reserve full right of allocution as to the appropriate sentence the Defendant should receive, unless otherwise provided above.

Defendant further understands that this agreement binds only the United States Attorney's Office for the Western District of Texas, the United States Attorney's Office for the Southern District of Iowa and the Defendant. The Defendant acknowledges his full understanding that by this plea agreement, no representations or agreements have been made or entered into with any other United States Attorney or any other federal or state prosecutor concerning other pending or

possible offenses or charges. This written plea agreement constitutes the entire agreement between the parties and shall not be modified except by agreement in open court or in a supplemental plea agreement signed by all the parties.

JOHNNY SUTTON
UNITED STATES ATTORNEY

DATE: Feb 28, 2005   BY: _____
                          C. LARRY MATHEWS, JR.
                          Assistant U.S. Attorney

DATE: 2/28, 2005        _____
                          ROBERT BARRERA
                          Attorney at Law

**I HAVE READ (OR HAD READ TO ME) THE ABOVE PLEA AGREEMENT IN ITS ENTIRETY AND AGREE TO THE TERMS SET FORTH IN IT. ADDITIONALLY, I HAVE READ (OR HAD READ TO ME) THE FACTUAL BASIS CONTAINED HEREIN AND AGREE TO THE FACTS SET FORTH IN THE FACTUAL BASIS.**

DATE: 2/28, 2005        _____
                          JOSHUA ABELL
                          Defendant

15

Attachment "A"

STIPULATION OF FACTS

1.  At all times relevant to this prosecution, the Defendant was a participant in the "warez scene" -- an underground online community comprised of individuals and organized groups who engage in the large-scale duplication, modification, reproduction, and distribution of copyright protected software over the Internet, in violation of federal copyright law. The leading warez "release" groups compete with one another to attain the reputation as the fastest, highest-quality provider of "pirated" software -- that is, computer software, games, movies, and music files that have been "cracked" (i.e., had their copyright protections removed or circumvented).

2.  Warez groups compete with one another to be the first to release new pirated software to the warez community for unauthorized reproduction and distribution worldwide. Preparing new pirated software for release and distribution to the warez scene generally requires a number of different steps. First, an individual known as a "supplier" will post an original copy of new computer software or other digital media to an FTP server on the Internet known as a "drop site." Frequently, "suppliers" are company insiders, software testers, or reviewers who can provide final versions of new product before it is released to the general public. Once the new supply is posted to the "drop" site, another individual, known as a "cracker," retrieves the software and removes or otherwise circumvents its copyright protection controls, including serial numbers, tags, duplication controls, and/or security locks. Once successfully cracked, the software is tested and packed for final posting to the "drop" site, where it is picked up by couriers for rapid distribution to other warez sites worldwide and, eventually, reaches public distribution channels such as publicly-accessible websites or online auctions. The entire process – from the initial appropriation of the copyrighted work to its worldwide pirated distribution – can, and typically does, occur within a matter of hours.

3.  FTP is a communication protocol for transferring files between computers connected to the Internet. FTP sites – also known as FTP servers – are computers connected to the Internet that serve as large storage facilities for software or other digital files which, in turn, may be copied and downloaded by users of the site through the FTP protocol. In the warez

16

scene, FTP sites are most often used to store and crack copyright protected software and other digital media and to host, collect, distribute, and trade illegal warez. These sites are not accessible to the general public. Access to FTP warez sites is typically controlled through a variety of security mechanisms. For example, a user is typically required to log on to the FTP site using a screen name and password approved by one of the system administrators for the FTP site. In most cases, the final level of authentication, which is done automatically, requires the user to attempt access to the FTP warez server only from a specific, authorized Internet Protocol (or "IP") address previously supplied to the system administrator(s). Failure to meet any of the security requirements results in a denial of access to the FTP server.

4. Active participants in the release and distribution process are rewarded in a variety of ways, often with privileged access to large, non-public caches of pirated works on warez FTP sites. With this access, a user is able to download vast amounts of pirated software for personal use or further distribution.

5. The Federal Bureau of Investigation (FBI) has conducted an investigation into various members of the warez community and has identified the Defendant as an individual involved in the illegal reproduction and distribution of copyright protected software, movies, games and music.

6. On or about January 2003, the Defendant Joshua Abell conspired with other individuals to build and operate a new warez FTP server. The server was identified by a specific group name and was intended to provide a private group of members with a library of copyright-protected material which they could duplicate for their own purposes.

7. From January 21, 2003 through April 21, 2004, the warez FTP server quickly grew in size and contained approximately 13,000 pirated software titles including movies, games, utility software and music. The new warez server also had a 100 megabyte Internet connection.

8. Defendant Joshua Abell was an original member of the warez FTP server and served as one of the site's system administrators responsible for the initial construction, maintenance and day-to-day operation of the warez FTP server.

9. From on or about January 21, 2003 through April 21, 2004, Joshua Abell communicated on a regular basis, using IRC and Instant messaging, with other managing

members of the warez FTP server to discuss and resolve issues associated with the continued operation of the warez server, including decisions related to which new groups and members should be admitted and which existing members should be deleted.

10.     Evidence obtained from the warez FTP server include computer-generated log files containing information regarding the activities of computer users, processes running on a computer, and the activity of computer resources. Log files may include "transfer logs" that capture information about each FTP file transfer. Transfer logs may include the date of transfer, name of the file transferred, direction of transfer (upload or download), the name or nickname of the individual accessing the computer, and the IP address of the computer sending or receiving the file.

11.     Transfers logs obtained from the warez FTP server indicate that the Defendant assisted in the uploading of 19 software titles and downloading 473 software titles to and from the "Gateway to Darkness" warez FTP server between August 16, 2003 and March 29, 2004. For any six month period during this time, the transfer logs evidence that the Defendant reproduced and/or distributed at least ten (10) copies of copyright protected software by transferring said software files to or from the "Gateway to Darkness" server and, collectively, the retail value of transferred software exceeded $2,500. Records obtained from the Defendant's Internet Service Provider confirm that the Defendant accessed the "Gateway to Darkness" warez FTP server from a computer located at his residence located at 339 Adrian Drive, San Antonio, Texas 78213-3538.

12.     Although Defendant did not engage in the commercial sale of pirated software, he did receive "personal financial gain" within the meaning of the criminal copyright statute, see 17 U.S.C. §§101 & 506(a)(1) and the <u>Federal Sentencing Guidelines</u> §2B5.3, Application Note 1, in that he received, and expected to receive, access to other copyrighted works at no cost.

13.     On April 21, 2004, FBI agents executed a search warrant at the Defendant's residence and confiscated two personal computers, various computer components, electronic equipment and hundreds of CD and DVD diskettes. At the time of the search, the Defendant cooperated with Agents and provided a signed statement detailing his involvement in the illegal reproduction and distribution of computer software.

14. A directory listing of business software titles from the FTP servers was provided to the Business Software Alliance (BSA). The BSA represents certain software manufacturers that produce business, utility and application software products. The BSA confirmed that the directory listing of software titles found on the "Gateway to Darkness" warez FTP server included certain products owned by their client companies which were subject to copyright protection and collectively exceeded $2,500 in retail value.

15. Based on the investigation to date, the Defendant's conduct in the infringement of copyright protected software in instant case has resulted in an infringement amount attributable to the Defendant of approximately $120,000 to $200,000.

16. Defendant agrees that one or more of the acts constituting the offenses charged in Information occurred in the Southern District of Iowa and in the Western District of Texas.

17. Defendant hereby certifies that the facts set forth above are true and accurate to the best of Defendant's knowledge.

JOHNNY SUTTON
UNITED STATES ATTORNEY

DATE: Feb 28, 2005   BY: _____
C. LARRY MATHEWS, JR.
Assistant U.S. Attorney

DATE: 2/28, 2005   _____
ROBERT BARRERA
Attorney at Law

DATE: 2/28, 2005   _____
JOSHUA ABELL
Defendant